LIZZIE B. DYOTT

*v.*

GEORGE HENDERSON, executor, &c., et al.

[Submitted December 6th, 1915.   Determined January 7th, 1916.]

1. Where a husband has procured a decree of divorce against his wife by fraudulently concealing from her the pendency of the suit, and thereafter died, relief against the operation of the decree should be sought by the wife by means of an original bill for relief rather than by a petition in the divorce suit.

2. After the decease of a spouse, the validity of the divorce decree should be tested in suits, or in aid of suits, actually pending which directly involve specific property rights affected by the divorce decree, but where, as here, the bill sets forth that complainant claims and desires to recover her dower in the real estate of her deceased husband and is barred from recovery by the fraudulent decree of divorce, and makes defendants to her suit all persons in interest, and they have all answered on the merits without objection to the sufficiency of the bill, the relief prayed for should not be denied, on the mere ground that no action or suit for dower, or other proceeding for the recovery of specific property, in which the divorce decree could be interposed as a bar, is in fact pending, or may never be brought.

3. *Girernaud* v. *Girernaud, 81 N. J. Eq. 66,* distinguished.

On final hearing on bill to set aside a decree of divorce as fraudulently procured.

*Mr. Lewis Starr,* for the complainant.

*Messrs. Bergen & Richman,* for the defendants.

LEAMING, V. C.

This suit has been brought by complainant to set aside a decree of divorce from the bonds of matrimony, which decree was entered in this court August 4th, 1913, against complainant herein, on the petition of her husband on the ground of adultery. The petitioner in the divorce suit has since died. The present

bill asserts that he died seized of certain real estate in New Jersey and elsewhere, in which real estate complainant is entitled to an interest but for the decree of divorce, and that the relief sought in this suit is to enable complainant to demand and receive her rights as a widow in the estate of her deceased husband. All persons interested in the estate are made defendants. The ground upon which relief is now sought is fraud in the procurement of the divorce decree.

At final hearing in this suit the files in the divorce suit were produced, and by those files it appears that jurisdiction over the defendant as an absent defendant was entertained by this court by reason of affidavits which, if true, fully established that the residence of the defendant could not be ascertained; an order was accordingly made dispensing with service of process or notice, other than by publication, and the cause was then heard *ex parte*. Defendant in the divorce suit—complainant herein—first learned of the divorce suit shortly before the present bill was filed by her.

The petition upon which the decree of divorce was entered charges adultery with one Peyser on August 13th, 1888, and at divers other times after that date until June 26th, 1891, and the decree entered is based upon proofs of acts of adultery during that period and upon the testimony of the petitioner that he had not lived with his wife since the latter date. The affidavit on which exoneration from service of process or notice on the defendant was primarily based was an affidavit of the petitioner made September 11th, 1911, in which he stated that the last post-office address or residence of the defendant which was known to him was in the neighborhood of West One hundred and fourth street, New York City, where he and defendant lived together prior to twenty years ago (that is, prior to September, 1891), and that he had exhausted every means to ascertain some subsequent post-office address or residence of the defendant and had not been able to ascertain the same. In that affidavit the petitioner also stated that the only relatives of the defendant of whom he had ever known were the father, mother and brother of the defendant, and that he believed them to be dead.

At the final hearing of the present suit it was conclusively established that the affidavit above referred to was false in its material statements. About one hundred letters, written by the petitioner in the divorce suit, now deceased, to complainant herein have been received in evidence. These letters cover a period extending from January, 1891, to June, 1905. They disclose that subsequent to September, 1891 (that being the date on which the adultery was established, the date on which petitioner testified he last lived with his wife, and the date named in his affidavit as her last-known address, on which affidavit he procured the order dispensing with service of process or notice in the divorce suit), and the year 1905, petitioner had been constantly aware of his wife's address, for during each of the years during all of that period he had written many letters to her at her various residences and had been in regular correspondence with her. The letters also disclose that during much of that period they lived apart, but at times lived together. As late as September 17th, 1903, twelve years after he says he last knew her address, a letter from him to her, postmarked Seabright, New Jersey, and addressed to her at 175 West Seventy-eighth street, New York City, says: "Send bundle of clothes in closet to laundry so I can get clean underclothes when am back home." The last letter produced, written by him to her, is under date of June 5th, 1905, and is addressed to her at 356 Columbus avenue, Boston, Massachusetts. There was also produced, on notice, several letters from her to him, which contained her address, written in 1894 and one written in 1905; these letters were found after his death in his safe deposit box. It thus appears from the correspondence alone, without consulting other evidence, that from 1891 to 1905, the petitioner in the divorce suit had been almost, if not quite, constantly acquainted with his wife's address, and during part of that period, and as late as 1903, had resided with her, and at the time he made the affidavit that he had not known her address since 1891, he had in his possession letters from her containing her address written during that period, the latest of which letters was in 1905. These letters alone disclose that the petitioner's affidavit in the divorce suit,

by means of which he procured from this court the right to a hearing without actual notice of the suit being brought to the knowledge of his wife, was not only false, but must have been intentionally false, for it is obviously impossible that he could have honestly testified that he had not known his wife's address since 1891 and had not lived with her since that date when he had regularly corresponded with her during a period of fourteen years after 1891, and had lived with her as late as 1903, and had in his safe deposit box at his death letters from her containing her address, the latest of which was written as late as 1905. Other evidence has also been introduced which discloses the falsity of the affidavit here in question. The affidavit sets forth the names of the relatives of the wife, all of whom, according to the affidavit, were dead, and does not include in the list of relatives the son of the wife by a former husband. The well-known purpose of such statements in affidavits of that nature is to disclose that inquiry has been made to ascertain the wife's address in every place where the information could be reasonably sought. This son has now testified, not only that he stayed with his mother and his stepfather, in 1903, when they were residing together at 175 West Seventy-eighth street, New York City, but that in 1909 he saw his stepfather and told him that his mother was then in Boston. It cannot be reasonably suggested that the divorce petitioner had forgotten the existence of this stepson, for the letters produced disclose that this stepson was a source of much dissension between the parties. There is also testimony of letters from complainant herein to her husband, which contained an envelope endorsement of the address of complainant, having been mailed by the witnesses to the divorce petitioner, at the request of complainant, as late as 1910 and 1911, but I have given little or no weight to that testimony.

Complainant herein was also permitted to testify that she had written letters to her husband regularly up to the time of his death and that her address was endorsed on all the envelopes. This testimony was received over the objection of defendants, based on the provisions of our Evidence act; but under the rule defined in *Cowdrey* v. *Cowdrey, 71 N. J. Eq. 353; affirmed in 72*

*N. J. Eq. 951*, the testimony was deemed competent. As it may be regarded as doubtful whether complainant should have been permitted in this suit to testify touching transactions with her deceased husband, I have determined to wholly disregard her testimony in all such matters, but to allow it to stand for the consideration of the court of review if it shall there be deemed competent.

From the testimony above reviewed, exclusive of that of complainant touching transactions with the deceased, I deem it clearly established in this suit, not only that the affidavit on which this court permitted the petitioner in the divorce suit to proceed to hearing *ex parte* without service of process or notice of the suit on the defendant therein was false, but necessarily was intentionally false and falsified to conceal the pendency of the divorce suit from the defendant therein, and was effective for that purpose. The mere existence of a substantial doubt whether the divorce decree was procured through fraud in the manner stated should lead this court to deny relief in a suit of this nature; but the evidence already referred to leaves no reasonable doubt. The petitioner obviously testified to what he knew to be false and made no honest effort to ascertain the address of his wife. It is reasonably certain that his wife's address could have been ascertained had he disclosed the truth to his solicitors It is also certain that if petitioner had testified before the master that he had resided with his wife as late as 1903, instead of testifying that he last resided with her in 1891, no decree of divorce could have been entered for an act of adultery which had been brought to his knowledge in 1891. That testimony would not only have demanded further inquiry for the address of the wife, but would have presented an issue of condonation which would have barred a decree until the apparent condonation should have been overcome by evidence. Petitioner deceived the court and deceived his own solicitors. In such circumstances it follows that the decree of divorce was procured by fraud—by fraud imposed upon the court and the defendant.

At final hearing of this suit counsel of defendant made the following objection to procedure:

"I wish also to make an objection to this manner of attacking a decree of the court of chancery. It seems to be a collateral attack upon the decree of the court of chancery rather than a direct attack. It seems to me the proceeding should have been to apply in the suit itself, the divorce suit, *Dyott* v. *Dyott*, to open the decree rather than to attack it in an independent suit."

The sufficiency of the bill had not been attacked in any manner prior to that time.

It seems clear that the relief sought by complainant could not have been had in the original divorce suit. The marriage status, which was the sole subject of litigation in the divorce suit, has been dissolved by death; there is no longer a marriage status to be dissolved by a decree of divorce; to open the decree is to abate the suit; there can accordingly be no rehearing of a divorce suit after the death of one of the parties. I am fully convinced that any relief to which complainant may be entitled is appropriately sought by an original bill for relief against the operation of the decree of divorce. *Story Eq. Pl.* § *426*. There are, however, forceful objections against entertaining a bill in which the sole object of the suit and the only relief to be granted is the setting aside of a fraudulent decree of divorce after the decease of the spouse who fraudulently procured the divorce decree. In *Givernaud* v. *Givernaud, 81 N. J. Eq. 66*, these objections are pointed out by Vice-Chancellor Stevenson. In *Wright* v. *Wright, 8 N. J. Eq. 143*, the bill was filed for dower, and in aid of the suit for dower sought to set aside a decree of divorce for fraud, which decree would have barred the dower if not set aside. In the present case, the bill asserts that complainant desires to recover her dower and is barred by the fraudulent divorce decree; but as no action or suit for dower is pending, the present bill cannot be said to be strictly a suit in aid of a pending litigation for dower or other rights as a widow. I incline to the view expressed in *Givernaud* v. *Givernaud,* that after the decease of a spouse the validity of a divorce decree should be tested in suits or in aid of suits actually pending which directly involve specific property rights which are affected by the divorce decree; but where, as in the present case, the bill sets forth that complainant claims and desires to recover her dower in the real estate of her

deceased husband and is barred from recovery by the fraudulent decree of divorce, and makes defendants to her suit all persons in interest, and which persons have all answered on the merits without objection to the sufficiency of the bill, I am unable to reach the conclusion that the relief prayed should be denied on the mere ground that no action or suit for dower or other proceeding for the recovery of specific property in which the divorce decree could be interposed as a bar is in fact pending or may never be brought. The following cases, and the cases therein collected, will disclose that this conclusion is in harmony with views entertained in other jurisdictions: *Bomsta* v. *Johnson* (*Minn.*), *36 N. W. Rep. 341; Groh* v. *Groh, 71 N. Y. Supp. 985; Fidelity Insurance Co. Appeal, 93 Pa. St. 242.* Through fraud this court has been induced to enter a decree which is operative on its face to deny to complainant the status of a widow and her property rights as a widow in the estate of her deceased husband. There are now before this court in this suit all parties interested in that estate and all have answered and have been heard on the issues presented by the pleadings. It is not suggested that there are any persons in interest who have not been made defendants herein; if any persons in interest have not been made parties to this suit, it should be unnecessary to here suggest that they will not be bound by any decree which may be entered. These circumstances would seem to demand that a possible error in procedure, which has not been raised by the pleadings or specifically interposed at any time, should not be operative to deny to this court the right to determine by its decree to be entered herein that its former decree was procured through fraud and is void so far as it affects the property rights of the parties defendant to this suit, and to deny to these defendants the right to assert the fraudulent decree as the foundation of rights which may be claimed by them. I will advise a decree to that effect.