**Pauline LEGORY, Appellant,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare.**

**No. 17444.**

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1969.

Decided April 9, 1970.

Daniel T. Hanley, Esquire, Passaic, N. J., for appellant.

Robert H. Heier, Dept. of Justice, Civil Division, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty Gen., David M. Satz, Jr., U. S. Atty., Morton Hollander, Attys., Dept. of Justice., Washington, D. C. on the brief), for appellee.

Before HASTIE, Chief Judge, and VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

Pauline and Orlando Legory were married in 1956 and thereafter had a daughter. In 1960 Mrs. Legory, having separated from her husband, instituted an action for divorce in New Jersey where the parties were domiciled. This action was uncontested and on March 10, 1961 a judgment nisi was entered. Three months later, final judgment was entered as of course, as was provided by New Jersey law. However, before the judgment thus became final Orlando had become ill and Mrs. Legory had returned to her former marital abode to care for him. The parties had become reconciled, cohabitation had been resumed, and they lived together as husband and wife until Orlando's death in November 1961.

Shortly after her husband's death Mrs. Legory filed an application for Social Security benefits on behalf of herself as widow of the wage earner, and on behalf of their infant daughter. These benefits were initially granted; however, after two payments Mrs. Legory's benefits as a widow were terminated when the Social Security Administration learned of the existing decree of divorce.[1] Mrs. Legory then applied for benefits as a divorced wife who had been receiving one half of her support from the deceased wage earner. 42 U.S. C. § 402(g) (1) (F). This application was finally denied on February 17, 1965.

In April 1965 Mrs. Legory petitioned the Superior Court of New Jersey to set aside the divorce decree. In addition to setting out the fact of her reconciliation with Orlando prior to the entry of the final judgment, Mrs. Legory explained that she had received no notice of the entry of a final decree and did not learn that the divorce had become final until after her husband's death. She had believed that a further hearing was necessary before the decree could become final. The New Jersey court granted her motion, ruling in part:

"ORDERED AND ADJUDGED that the final judgment of divorce entered herein on June 12, 1961, dissolving the marriage between Pauline Legory and Orlando Legory be and the same is hereby vacated and set aside, and it is further

"ORDERED AND ADJUDGED that the marriage between the parties be deemed to have continued without interruption until dissolved by the death of Orlando Legory on November 7, 1961, and it is further

"ORDERED AND ADJUDGED that the said Pauline Legory be and she is hereby declared to be the lawful widow of the said Orlando Legory."

Immediately following the entry of this order, Mrs. Legory reapplied for benefits as the widow of Orlando Legory.[2] Her application was granted, but benefits were awarded only from May 24, 1965, the date of the order invalidating the divorce, rather than as claimed from the date of her husband's death in 1961. Thus, the Social Security Administration ruled that Mrs. Legory did not have the status of widow for Social Security purposes until the date of the vacating order, but acquired such status at that time. This is an appeal from a decision of the district court affirming that ruling of the Social Security Administration.

■ The Social Security Act entitles Mrs. Legory to benefits for every month beginning with the first month in which she was a widow. 42 U.S.C. § 402(g); 20 C.F.R. §§ 404.335 and 404.336. Whether she had the status of widow

---

1. It seems that the benefits theretofore paid Mrs. Legory were recovered by temporarily suspending benefits for her child.

2. The Administration treated Mrs. Legory's 1961 application for widow's benefits as having been reopened. 20 C.F.R. §§ 404.957 and 404.958.

for Social Security purposes prior to the court order invalidating her divorce must be determined in accordance with state-law because the Social Security Act provides that:

> "An applicant is the * * * widow * * * of a fully or currently insured individual * * * if the courts of the state in which such insured individual * * * was domiciled at the time of death * * * would find that such applicant and such insured individual were validly married at the time such * * * [insured individual] died." 42 U.S.C. § 416(h) (1) (A).[3] Orlando Legory died domiciled in New Jersey. The issue for determination is whether, on the present facts, the courts of that state would hold that the Legorys were validly married at the time of his death.

It is not necessary to decide whether the Social Security Administration could properly have judged Mrs. Legory a widow before she brought an action in the state courts to have the divorce set aside. Her present application for benefits was filed after the state order vacating the divorce. The inquiry of this court, therefore, is limited to the question whether the courts of New Jersey would respect the terms of that order and find that the marriage continued uninterrupted until dissolved by Orlando's death.[4]

In denying Mrs. Legory any benefits prior to the date of the vacating order, the Social Security Administration reasoned that the final judgment of divorce, entered after the parties had resumed cohabitation, was not void but merely voidable, and thus must still be deemed effective from the date of its entry until it was set aside in a later proceeding. However, the cases cited in support of this position illustrate merely that in certain circumstances it may be inequitable to set aside a final judgment of divorce simply because the parties temporarily resumed cohabitation prior to the entry of that judgment.[5] No case is cited and our research has disclosed no case holding that once a divorce decree is vacated it continues to have legal effect as an in-

---

3. 42 U.S.C. § 416(h) (1) (A) further provides:

 "If such courts would not find that such applicant and such insured individual were validly married at such time, such applicant shall, nevertheless be deemed to be the * * * widow * * * of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a * * * widow * * * of such insured individual."

4. The Administration does not contend that the state court acted improperly in setting the divorce aside. It accepts the vacating order insofar as it sets aside the divorce, but refuses to apply that order as relating back to the date of the decree it vacated. The issue in the present case is, therefore, entirely different from that in Cain v. Secretary of H.E.W., 4th Cir. 1967, 377 F.2d 55, upon which the Administration relies. That case did not involve the retroactivity of a state vacating order.

Rather, the Administration there refused to award any benefits contending that the divorce should not have been set aside.

The present case is more closely analogous to Litteral v. Celebrezze, E.D.Ky. 1963, 215 F.Supp. 865, which also involved the question of the retroactive effect for Social Security purposes which should be given a state order invalidating a divorce.

5. The question whether voluntary cohabitation during the pendency of a divorce suit makes the judgment of divorce void or voidable is unclear under New Jersey Law. Compare Byrne v. Byrne, 1921, 93 N.J.Eq. 5, 114 A. 754, with Pavlicka v. Pavlicka, 1964, 84 N.J.Super. 357, 202 A.2d 200. See also Note, Cohabitation During Pendency of a Divorce Action, 19 Wash. & Lee L.Rev. 243 (1962). In any case, our view of the present issue as not whether the divorce was void or voidable, but whether the courts of New Jersey would give the order vacating that divorce retroactive effect in accordance with its terms, makes it unnecessary to resolve the above doubtful issue of New Jersey law.

terruption of the continuity of the marriage for the period preceding its vacation.

◼ We emphasize that the present case does not present a situation where the order vacating the judgment of divorce is silent upon the subject of retroactivity. The New Jersey court specifically held the vacating decree retroactive, stating "that the marriage between the parties be deemed to have continued without interruption until dissolved by the death of Orlando Legory * * *." While the Social Security Administration may ignore a decision by a lower state court, particularly one entered *ex parte*, when that decision is demonstrably inconsistent with the general law of the state, Cain v. Secretary of H. E. W., *supra*, such a course is improper when the lower court decision is fair and logical and no authoritative decision to the contrary exists.

◼ The purpose of the New Jersey three-month "waiting period" before a decree of divorce becomes final is to foster reconciliation of the parties. Iovino v. Iovino, 1959, 58 N.J.Super. 138, 155 A.2d 578. In the present case the Legorys did reconcile during that period, and the New Jersey court vacated the divorce because of such reconciliation. It is illogical that a divorce set aside precisely because the conjugal relationship in fact continued should thereafter be held to suspend the marital status between the divorce decree and its vacation.[6]

◼ It is arguable that an order invalidating a judgment of divorce should not be applied retroactively to a party who has relied on the validity of that judgment during the intervening period. However, New Jersey cases, though considering such reliance by an innocent third party in determining whether to set aside a divorce, imply that if the divorce is set aside, the vacating order will apply retroactively to such a party. *See* Shammas v. Shammas, 1952, 9 N.J. 321, 333, 88 A.2d 204, 210; Pavlicka v. Pavlicka, *supra*; Plodzien v. Plodzien, 1937, 121 N.J.Eq. 270, 189 A. 621. In any event the Social Security Administration is quite unlike the innocent third persons in the above cases who married one of the parties to a divorce in reliance on the validity of that divorce. In addition, the Administration has not recommitted funds or been in any other way prejudiced in reliance on the judgment of divorce, and is, therefore, not entitled to avoid the full effect of the vacating order. *Cf.* Pearsall v. Folsom, N.D.Calif. 1956, 138 F.Supp. 939, 944, *aff'd* 9th Cir. 1957, 245 F.2d 562.

It is also noteworthy that the Social Security Administration has, despite its protests, accepted the retroactivity of the New Jersey order setting aside the divorce. For by awarding Mrs. Legory benefits as a "widow", albeit only from the date of the vacating order, the Administration necessarily determined that the Legorys were married at the time of Orlando's death. 42 U.S.C. § 416(h) (1) (A). The Administration also has found that Mrs. Legory satisfied the statutory requirement that to qualify as a widow an applicant must have been married to the deceased for nine months "immediately prior to the day on which he died." 42 U.S.C. § 416(c). Yet, this was part of the period between divorce decree and vacating order.

6. Although no case has been found directly on point, it seems that an order setting aside a divorce after the husband's death would at least restore to the wife a widow's share in his undistributed property. Dyott v. Henderson, 1916, 85 N.J. Eq. 338, 97 A. 35; Givernaud v. Givernaud, 1912, 81 N.J.Eq. 66, 85 A. 830; Wright v. Wright, 1849, 8 N.J.Eq. 143, 153; 3 A. Freedman & M. Freedman, Law of Marriage and Divorce in Pennsylvania § 741 (2d ed. 1957). Such a result would not only indicate that Mrs. Legory was Orlando's widow for the purpose of the devolution of his property, but would also satisfy the alternate test for determining whether she is a widow for Social Security purposes. N. 3, *supra*.

■■ Finally, in support of its contention that the vacating order should be treated prospectively for Social Security purposes, the Administration attempts to analogize the present case to the situation where a widow entitled to benefits remarries and that remarriage is later annulled. A widow's entitlement to benefits under the Social Security Act terminates when she remarries. 42 U.S.C. § 402(g) (1) (F). However, several cases have held that when the remarriage is subsequently annulled, benefits should be reinstated, but only prospectively from the date of the annulment. Pearsall v. Folsom, 9th Cir. 1957, 245 F.2d 562; Santuelli v. Folsom, N.D.Calif., 1958, 165 F.Supp. 224; Sparks v. United States, D. Vt.1957, 153 F.Supp. 909; Mays v. Folsom, D.Idaho, 1956, 143 F.Supp. 784. The rationale for not awarding benefits during the de facto existence of the remarriage is clear. The Social Security Act is intended to provide economic support to a widow who has been deprived of such support by the death of her husband. When the widow remarries she becomes, at least during the existence of that remarriage, entitled to support from her new husband. An additional award of Social Security benefits for that period would be inequitable. Nott v. Flemming, 2d Cir. 1959, 272 F.2d 380; Pearsall v. Folsom, *supra*. *See*, Sleicher v. Sleicher, 1929, 251 N.Y. 366, 167 N.E. 501.[7] In the present case Mrs. Legory's divorce, unlike a remarriage, did not provide her with another means of support. The death of her husband deprived her of that support which the Social Security Act undertakes to replace.

The judgment will be reversed and the cause remanded for the entry of judgment consistent with this opinion.

7. The dominance of equitable considerations is further indicated by the rule that, when the annulment entitles her to future support from her second marital partner, benefits as the widow of her first husband will not be reinstated. Nott v. Fleming, *supra*. But see Yeager v. Flemming, 5th Cir. 1960, 282 F.2d 779.