ROBINSON, by his Guardian ad Litem, Edward J. Coe, Plaintiff-Respondent, v. KOLSTAD, and another, Defendants-Appellants.

*No. 77–351. Argued May 1, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 886.)

For the appellants there were briefs by *John W. Krueger* and *Krueger & Krueger* of Rhinelander, and oral argument by *John W. Krueger.*

For the respondent there was a brief by *James C. Herrick* and *Axley, Brynelson, Herrick & Gehl* of Madison, and oral argument by *James C. Herrick.*

Brief amicus curiae, Attorney General, was filed by *Bronson C. La Follette,* attorney general, and *Shari Waydick,* assistant attorney general.

CONNOR T. HANSEN, J.   The facts alleged, and assumed to be true for purposes of the motion to dismiss, are substantially as follows:

The decedent, Keith Larson, kept steady company with the plaintiff's mother, Susan Robinson Taft, nee Robinson, for more than a year prior to his death. They planned to be married when Larson reached majority on March 29, 1973, and Larson had asked a friend to be the best man at the wedding.

On October 13, 1972, Susan Taft became eighteen years old. She had spent the night at Larson's home on several occasions previously, and after her eighteenth birthday spent every night with him. She had sexual relations with Larson and with no other man.

Taft soon suspected she was pregnant. On October 27, 1972, Larson drove her to a doctor, who administered a

pregnancy test which was paid for by Larson. The doctor informed Taft that she was pregnant, and she told him she planned to marry soon.

Larson did not question that he was the father of the child. He planned to marry Taft as soon as his mother would consent; if she denied consent, he planned to be married when he reached majority. He and Taft told friends that he would be the child's father and that he and Taft were to be married.

Two days after Taft learned she was pregnant, on October 29, 1972, Larson was killed in a collision involving a pickup truck driven by defendant-Kolstad. The complaint alleges the collision was the result of Kolstad's negligence.

The plaintiff, Eric Robinson, was born June 16, 1973.

On August 3, 1973, Larson's mother, a recognized lineal heir under the Wisconsin statutes, commenced a wrongful death action against the defendants. On July 15, 1974, that action was dismissed upon stipulation of the parties and upon payment by the defendant, Allstate Insurance Company, of $7,654.81 in settlement of the wrongful death claim.

On December 30, 1976, the instant action was commenced.

This appeal concerns the narrow question of whether a posthumous illegitimate child may maintain an action for the death of his putative father under the wrongful death statutes. Secs. 895.01, 895.03 and 895.04, Stats. [1]

In defining the party-plaintiffs in a wrongful death action, sec. 895.04 (2), Stats., provides that the amount recovered in such action belongs ". . . to the deceased's

---

[1] Subsequent to the death of the plaintiff's putative father, Keith Larson, sec. 895.04(4), Stats., was amended, by Laws of 1975, ch. 287, effective June 2, 1976, so as to increase the additional damages for loss of society and companionship from not to exceed $5,000 to not to exceed $10,000.

lineal heirs as determined by s. 852.01 . . ." if there is no surviving spouse.

In *Krantz v. Harris*, 40 Wis.2d 709, 162 N.W.2d 628 (1968), this court held that a decedent's "lineal heirs" are to be determined, in the case of an illegitimate child, by the provisions of sec. 237.06, Stats. 1967, now sec. 852.05(1). That section provides:

"*852.05 Status of illegitimate person for purposes of intestate succession.* (1) An illegitimate child or his issue is entitled to take in the same manner as a legitimate child by intestate succession from and through (a) his mother, and (b) his father if the father has either been adjudicated to be such under ss. 52.21 to 52.45, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him."

The attorney general has filed a brief amicus curiae urging that sec. 852.05(1) and ch. 52, Stats., be construed to permit the commencement of a paternity proceeding after the death of the putative father. This question was considered in the consolidated appeals of *In re Estate of Blumreich* and *Caldwell v. Estate of Blumreich,* ante, p. 545, 267 N.W.2d 870 (1978).

The *Blumreich Cases, supra,* held that a posthumous paternity proceeding would be contrary to the provisions of ch. 52 and the holding of this court in *Krantz v. Harris, supra,* and inconsistent with the policy determinations of the legislative enactments. The *Blumreich* holding is controlling on this issue and requires the rejection of the argument that ch. 52 should be construed to permit a posthumous paternity proceeding.

*In Re Estate of Blumreich* and *Caldwell v. Estate of Blumreich, supra,* also presented the question of whether the Wisconsin Wrongful Death Act and sec. 852.05(1), Stats., deny equal protection or due process of law. Those

cases involved an illegitimate child born after the death of his putative father. The child sought to commence an action for the wrongful death of the putative father and to inherit from his estate, but was unable to satisfy the requirements of sec. 852.05(1), Stats. This court rejected the argument that those requirements deny afterborn illegitimates equal protection or due process of law. That holding is dispositive of this issue on this appeal.

Sec. 852.05(1), Stats., prescribes reasonable means of proof of paternity for illegitimate children. There is no separate statutory classification for children born out of wedlock. Under no construction of the statutes can it be said that there is a statutory disinheritance of illegitimate children. In addition to the legitimization of children by such procedures as subsequent marriage of the parents and adoption, sec. 852.05(3), paternity may be shown by an adjudication in paternity proceedings, by oral or written admissions of the father in open court, or by acknowledgment in writing signed by the putative father without a witness. The only types of proof excluded by the statutes are oral admissions outside of court or unsigned written acknowledgments. Sound policy reasons for these legislative exclusions are readily apparent.

The constitutional provisions, both state and federal, for the protection of individuals, involve difficult questions of balancing, and the particular facts in the instant case make it especially so. However, every law enacted, unless it applies to all persons at all times and in all places, inevitably affects some and does not affect others.

If it could be said that the legislative enactment categorically disinherited posthumous illegitimate children, the argument of denial of equal protection under either the fourteenth amendment to the United States Constitution or art. I, sec. 1 of the Wisconsin Constitution

would rise to a different dimension.[2] We do not believe the classifications reflected in the statutes under consideration are proscribed by either state or federal constitutional provisions. The statutes accord illegitimate children the same rights accorded children born in wedlock, provided only that they establish their parentage in a manner recognized by the statutes. In prescribing reasonable methods of proving parentage, the statutes serve legitimate legislative purposes.

The fact that the statutes do not alleviate all difficulties, or that they might have provided otherwise, does not *ipso facto* make them a denial of equal protection.

Finally, the plaintiff contends that an action for the wrongful death of a father may be maintained by a child who was unborn at the time of the father's death, whether or not the unborn child was a viable fetus at the time of the father's death; the defendants argue that a nonviable fetus is not a "person" as that term is used in the fourteenth amendment to the United States Constitution and that such a fetus is incapable of maintaining an action for a wrongful death occurring before the fetus was viable.

This question is not specific to unborn illegitimate children. The arguments of the respective parties are fully applicable to any unborn child, legitimate or illegitimate.

In view of our decision in the *Blumreich Cases, supra,* it is unnecessary to resolve this question. Sec. 852.05 (1), Stats., sets forth the exclusive methods by which paternity of illegitimate children can be established. The complaint in the instant case does not allege facts sufficient to satisfy any of these statutory requirements. In the absence of such allegations, the instant complaint is fatally deficient. Any question as to the ability of an

---

[2] Art. I, sec. 1 of the Wisconsin Constitution is substantially equivalent to the fourteenth amendment to the United States Constitution. *State ex rel. Sonneborn v. Sylvester,* 26 Wis.2d 43, 49, 132 N.W.2d 249 (1965).

after-born child to maintain a wrongful death action is thus rendered moot, whether the unborn child was viable or nonviable at the time of the alleged wrongful death.

Because the instant complaint fails to allege facts sufficient to comply with the statutory requirements, the complaint fails to state a claim on which relief can be granted. The plaintiff acknowledges that he can not meet the burden of proof required by sec. 852.05(1), Stats. Therefore, the trial court erred in denying the motion to dismiss. The order denying the motion to dismiss the complaint must be reversed.

*By the Court.*—Order reversed, with directions to dismiss the complaint.

DAY, J. *(dissenting).* I dissent in this case for the same reasons I explained in *In re Estate of Blumreich,* ante, p. 545, 267 N.W.2d 870 (1978). Sec. 852.05(1), Stats. (1975) denies posthumous illegitimates equal protection and due process. Having found sec. 852.05(1) unconstitutional, I would hold that a posthumous illegitimate may bring a declaratory judgment action to have his paternity established.

The fact of this case, even more than those in the *Blumreich* cases, show how sec. 852.05(1), Stats., denies equal protection and due process to posthumous illegitimates such as Eric Robinson. Robinson's mother, Susan Taft, had sexual relations with no man other than Keith Larson prior to October 27, 1972. On that day, Susan Taft was given a pregnancy test that Mr. Larson paid for. The test showed that she was pregnant. Larson never questioned that he was the father of the child. He told friends that he was the father and that he and Ms. Taft were going to be married.

On October 29, 1972, two days after Larson found out that Ms. Taft was pregnant, he was killed in a car-truck

collision. At the time of Larson's death, the receipt from the pregnancy test was in his billfold.

The majority opinion holds that sec. 852.05(1), Stats. does not deny Eric Robinson equal protection or due process.

"We do not believe the classifications reflected in the statutes under consideration are proscribed by either state or federal constitutional provisions. The statutes accord illegitimate children the same rights accorded children born in wedlock, provided only that they establish their parentage in a manner recognized by the statutes."

Sec. 852.05(1), Stats., does not accord illegitimate children the same rights. Illegitimate children may not inherit from or recover for the wrongful death of their fathers unless there is a paternity adjudication or an acknowledgment in writing or in open court. With any posthumous illegitimate, these are nearly impossible requirements. A pre-natal paternity proceeding is as unlikely as the written acknowledgment of a fetus.

In this case, the requirements of sec. 852.05(1), Stats., are especially onerous. Less than forty-eight hours passed from the time that Larson found out that Ms. Taft was pregnant until Larson died in the collision. During that time Larson was required by 852.05(1) to be adjudged the father in a paternity action or to acknowledge in writing that the fetus of Eric Robinson would one day be his child. As might be expected, Larson failed to meet the requirements of the statute. This failure means that Eric Robinson is forever barred from inheriting from his father and from receiving wrongful death benefits. In terms of equal protection, sec. 852.05(1) creates invidious discrimination against posthumous illegitimates. In terms of due process the statute creates an irrebuttable presumption that prevents posthumous illegitimates from establishing their paternity. *Blumreich, supra.*

I would affirm the order of the trial court.

I am authorized to state that Justice SHIRLEY S. ABRA-HAMSON concurs in this dissent.