Eric Stuart Le FEVRE, by his guardian, Kris H. Grapentin, Plaintiffs-Appellants-Cross Respondents,

v.

Julie Ann SCHRIEBER, a/k/a Mathes and Milwaukee Mutual Insurance Company, Defendants-Respondents-Cross Appellants,

TRANSPORTATION INSURANCE COMPANY, Defendant.

Supreme Court

*No. 90-2705. Oral argument February 26, 1992.—Decided April 22, 1992.*

(Also reported in 482 N.W.2d 904.)

For the plaintiffs-appellants-cross respondents there were briefs by *Joseph M. Welch* and *Bachman, Cummings, McKenzie, Hebbe, McIntyre & Wilson, S.C.,* Appleton and oral argument by *Mr. Welch.*

For the defendants-respondents-cross appellants there was a brief by *Roger A. Glenn* and *Glenn & Hoff, S.C.,* Appleton and oral argument by *Roger A. Glenn.*

STEINMETZ, J.   The issue presented to this court is whether a child who is born out of wedlock has standing to bring a wrongful death action when the paternity adjudication occurred after the death of the alleged father. A wrongful death action was brought on behalf of E.S.L., the nonmarital, posthumous child of accident victim Stuart T. Le Fevre. The action was brought by E.S.L.'s mother and guardian, Kris R. Grapentin, against the driver of the other car involved in the accident, Julie Ann Schrieber, the insurer of her vehicle, Milwaukee Mutual Insurance Company, and the insurer for worker's compensation benefits, Transportation Insurance Company.

The circuit court for Calumet county, Judge Hugh F. Nelson, did not recognize the paternity decision of the Outagamie county circuit court finding Stuart Le Fevre to be the father of E.S.L. Rather, the trial court decided that E.S.L. did not have standing to maintain a wrongful death action because of the absence of any of the three criteria specified in sec. 852.05(1), Stats.[1] On October 19, 1990, the court dismissed the claim with prejudice.

The case is before this court on certification by the court of appeals pursuant to sec. 809.61, Stats. We hold that the adjudication of paternity on February 8, 1989, by the Outagamie county circuit court is valid, and, therefore, based on sec. 852.05(1), the nonmarital child in this case is a lineal heir. As a result, E.S.L. has stand-

---

[1]Section 852.05(1), Stats., provides as follows:

**852.05  Status of nonmarital child for purposes of intestate succession. (1)** A nonmarital child or the child's issue is entitled to take in the same manner as a marital child by intestate succession from and through his or her mother, and from and through his or her father if the father has either been adjudicated to be the father in a paternity proceeding under ch. 767, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him.

735

ing to bring an action for the death of his father under Wisconsin's wrongful death statute, sec. 895.04.

Whether a plaintiff has standing is a question of law which an appellate court decides independently of the trial court's decision. *See Wis. Hosp. Ass'n v. Nat. Resources Bd.*, 156 Wis. 2d 688, 457 N.W.2d 879 (Ct. App. 1990); *Richards v. Cullen*, 152 Wis. 2d 710, 449 N.W.2d 318 (Ct. App. 1989). In addition, upon review of the application of appropriate law in granting a motion for summary judgment, the supreme court does not defer to the trial court. Instead, it analyzes and applies law without deference to the trial court. *See Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 345 N.W.2d 874 (1984).

The factual findings are undisputed. On July 28, 1988, Stuart Le Fevre died from injuries suffered in a two-car accident. At the time of the incident, Le Fevre's girlfriend was pregnant. She gave birth to E.S.L. approximately ten weeks after Le Fevre's death.[2] Le Fevre's father and personal representative brought a petition to establish paternity pursuant to sec. 767.45(1)(e), Stats., for the purpose of obtaining worker's compensation benefits for E.S.L. On February 8, 1989, the Outagamie county circuit court adopted the findings of fact, conclusions of law, and judgment of the family court commissioner for Outagamie county who concluded that based on the paternity proceeding under chapter 767, Stuart T. Le Fevre was the father of E.S.L. There were no reservations mentioned in the record as to the accuracy of this holding.[3]

---

[2]The record states that prior to his death Stuart Le Fevre informally admitted that he was the father of E.S.L. He did not make his admission, however, in open court nor in a writing.

[3]Restraints on the ability of nonmarital children to ascertain

A wrongful death action was initiated on behalf of E.S.L. seven months later against Schrieber, Milwaukee Mutual Insurance Company and Transportation Insurance Company. The defendants brought a motion for summary judgment claiming that the child was not a proper party plaintiff. They argued that because E.S.L. was a posthumous child and born out of wedlock, he could not show paternity under sec. 852.05(1), Stats., thus resulting in E.S.L. being unable to maintain an action for wrongful death. Under sec. 852.05(1), a nonmarital child is entitled to what a marital child would receive from a parent if "the father has either been adjudicated to be the father in a paternity proceeding under ch. 767, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him."

The trial court judge agreed with the defendants' position. He stated that "posthumous actions for paternity are clearly not maintainable" and ruled that "the requirements of Section 852.05 are completely unsatisfied." The motion for summary judgment was granted and the case dismissed.

Judge Nelson relied on several Wisconsin cases in concluding that a posthumous paternity action could not be maintained by E.S.L. The cases that the court found controlling include: In *Paternity of N.L.B,* 140 Wis. 2d 400, 411 N.W.2d 144 (1987); *In re Estate of Blumreich,* 84 Wis. 2d 545, 167 N.W.2d 870 (1970); *Robinson v. Kolstad,* 84 Wis. 2d 579, 267 N.W.2d 886 (1978); and *C.R. v. American Standard Ins. Co.,* 113 Wis. 2d 12, 333 N.W.2d 121 (Ct. App. 1983). We find the case law that

---

paternity must be imposed only for reasons relating specifically to proof problems encountered in paternity determinations. *See State ex rel. Adult & Family Services v. Bradley,* 295 Or. 216, 666 P.2d 249 (1983).

737

the circuit court relied on distinguishable from the present situation, and, therefore, conclude the cases are not controlling in the case before us.

For example, the circuit court cited *In Paternity of N.L.B.* for the proposition that "paternity actions do not survive the death of the alleged father." In that case, the paternity action was brought against the estate of the putative father. Actions were also brought against the estate of putative fathers in *Robinson* and *Blumreich.* In contrast, the present case involves a posthumous paternity action brought by the personal representative of the deceased. This action is clearly allowed under the plain meaning of sec. 767.45(1), Stats.[4] In addition, the state's interest in the former cases was more compelling than in the present case, since those actions were brought against the estate and were contested.

Another discernable factor between the present case and the circuit court's use of *Blumreich* is the fact that *Blumreich* involved secs. 52.21 and 52.45, Stats. These statutes are different than those involved in the present case. In fact, sec. 52.21 was repealed by L. 1979, c. 352, sec. 9, effective July 1, 1981, and, sec. 52.45 was repealed by L. 1979, c. 352, sec. 11, effective July 1, 1981.

Finally, the court's reliance on *C.R. v. American Standard Ins. Co.* was inappropriate. *American Standard* concerned whether the trial court erred in consider-

[4]Section 767.45(1), Stats., states an action may be brought by the following individuals for the purpose of determining the paternity of a child:

(a) The child. (b) The child's natural mother. (c) A man presumed to be the child's father under sec. 891.41. (d) A man alleged or alleging himself to be the father of the child. (e) The *personal representative* of a person specified under pars. (a) to (d) if that person has died.(Emphasis added.)

738

ing surrounding circumstances when deciding the meaning of a writing to determine whether or not the putative father acknowledged paternity. The court of appeals concluded that the trial court did not err. The present case does not involve the meaning of a writing to prove paternity, nor does it question whether surrounding circumstances should be used in deciding paternity.

Wisconsin's wrongful death statute, sec. 895.04, Stats., gives recovery to the decedent's issue as determined under the intestacy statutes. A nonmarital child in Wisconsin is entitled "to take" in the same manner as a marital child, if the father has been adjudicated to be the father under ch. 767. The intestacy statute, sec. 852.03(4), states that a person may be an heir under sec. 852.01, even though that person was born after the death of the decedent.[5] Thus, a posthumously born legitimate child can bring this claim, even though the child was not born at the time of the accident. The same right belongs to the nonmarital child. It is required by equal protection of the Fourteenth Amendment of the United States Constitution.[6]

---

[5]Specifically, sec. 852.03(4) states:

**Posthumous Heirs.** A person may be an heir under s. 852.01 even though born after the death of the decedent if that person was conceived before decedent's death.

[6]A law may violate the constitutional guarantee of equal protection when it conclusively denies to one subclass of nonmarital children benefits which are potentially available to another subclass. *Handley v. Schweiker,* 697 F.2d 999, 1002 (11th Cir. 1983). To withstand a constitutional challenge, a classification based on illegitimacy must bear substantial and evident relation to particular state interests. *See In Re Paternity of B.W.S.,* 125 Wis. 2d 212, 371 N.W.2d 379 (Ct. App. 1985). In a situation as in the present case where the action is brought by the personal represen-

The United States Supreme Court reviewed a case concerning nonmarital children in *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164 (1972). In Weber the Court was faced with deciding whether nonmarital children were able to recover under Louisiana worker's compensation law benefits for the death of their father. Two children were born out of wedlock; one was an unacknowledged minor child and the other was born posthumously. The Court held that "Louisiana's denial of equal recovery rights to dependent unacknowledged illegitimate violates the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 165. The Court applied a balancing test of the legitimate state interest promoted with the fundamental personal rights endangered. *Id.* at 173. The Court stated that the state's legitimate interest in protecting legitimate family relationships was not promoted by distinguishing between marital and nonmarital children in a statutory compensation scheme where dependency on the decedent was a prerequisite to anyone's recovery. *Id.* at 173. The Court held that the statutory classification between marital and nonmarital children bore no rational relationship to any legitimate state interests compelling or otherwise. *Id.* at 176.

*Weber* requires that an unacknowledged posthumous illegitimate child be given the same opportunity to recover worker's compensation benefits as a child born

tative of the deceased, where the action is not contested, and where proof of paternity problems can be readily resolved, a statutory classification denying certain nonmarital children the right to establish paternity does not bear any rational relationship to a legitimate interest.

We find that Julie Ann Schrieber and Milwaukee Mutual Insurance Company have not shown sec. 852.05(1), Stats., unconstitutional beyond a reasonable doubt.

of a marriage. This requires that a paternity action be allowed posthumously, since the child must be able to prove that he is an issue of the deceased in order to recover benefits. It logically follows then that if a nonmarital child can be considered an issue for purposes of worker's compensation benefits, the child also must be considered an issue for wrongful death actions.

We conclude that the decision of the circuit court in not recognizing the paternity decision was erroneous. We hold E.S.L. has standing to bring a claim for the wrongful death of his father.

*By the Court.*—The judgment of the Calumet county circuit court is reversed and the cause remanded.