Heidi KRENZ–BUCHANAN on Behalf of Jessica KRENZ, a minor, Plaintiff,

v.

Donna E. SHALALA, Secretary of the Department of Health and Human Services, Defendant.

No. 94–C–0451–C.

United States District Court, W.D. Wisconsin.

April 25, 1995.

Jack Longert, Legal Action of Wisconsin, Inc., Madison, WI, for Heidi Krenz–Buchanan, Jessica Krenz.

Richard D. Humphrey, Asst. U.S. Atty., Madison, WI, for Donna Shalala.

## OPINION AND ORDER

CRABB, Chief Judge.

Plaintiff applied for Child Insurance Benefits under the Social Security Act for her child, Jessica Krenz, the alleged child of a fully insured wage earner, Jeffrey Blakley, who died unmarried on November 28, 1982, before Jessica was born. Plaintiff's application was denied initially and upon reconsideration and was then the subject of a hearing before an administrative law judge. The administrative law judge denied benefits on the ground that Jessica did not qualify as a child of the deceased wage earner under the terms of the Social Security Act, but he suggested to plaintiff that she seek a Wisconsin state court declaration of Jeffrey Blakley's paternity. Acting on the suggestion, plaintiff brought an action in the Circuit Court for Rock County, Wisconsin, which ordered that

blood tests be performed on plaintiff, on Jessica and on Jeffrey Blakley's parents. Presented with results showing the probability to be 99.96% that a son of Jeffrey Blakley's parents was the father of Jessica, the court found as fact that Jeffrey Blakley was Jessica's father and it ruled that Jessica "shall be entitled to any and all benefits that may flow as a result of Jeffrey Alan Blakley's intestacy." Record at 104.

Plaintiff submitted the blood test results and court ruling on paternity to the Appeals Council, which considered the additional evidence but concluded it did not warrant a change in the hearing decision. The Appeals Council concluded that the Wisconsin trial court's determination of paternity was entitled to no weight because Wisconsin law does not permit the bringing of a paternity action after a putative father has died. The council denied plaintiff's request for review of the decision, making it a final decision of the Secretary.

Plaintiff challenged the Secretary's adverse decision in this court and the matter was referred to the United States Magistrate Judge, who concluded that the Appeals Council had misconstrued Wisconsin law. He recommended that the case be remanded to the Secretary for further proceedings. The Secretary has lodged objections to this recommendation; plaintiff has replied to the objections; and the Secretary has responded to the reply. I will not consider the Secretary's reply brief because the rules do not contemplate a response to a reply and the parties have now submitted a total of five briefs, which should be more than sufficient to air the issues.

Whether Jessica has a right to benefits raises intriguing questions of the interplay of state law and Social Security regulations. The Social Security Act provides that the child of an insured individual who dies is entitled to benefits if the child has filed an application, was unmarried and under the age of 18 at the time of the filing and was dependent upon the deceased at the time of death. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350. 42 U.S.C. § 416(h) is directed to the determination of family status. Section 416(h)(2)(A) tells the Secretary that in mak-ing the determination whether an applicant is the child of a fully insured, deceased individual, the Secretary is to apply the law that would be applied in determining "the devolution of intestate personal property by the courts of the State" in which the deceased was domiciled at the time of death. Applicants who would have the "same status relative to taking intestate personal property as a child or parent shall be deemed such." *Id.* Alternatively, an applicant can be deemed to be the child of a deceased insured if the insured had acknowledged in writing or been decreed by a court to be the parent of an applicant or the insured is shown to have been the parent (by evidence "satisfactory to the Secretary") *and* the insured was living with or contributing to the support of the applicant at the time of death. § 416(h)(3)(C).

Before Jeffrey Blakley died, he never acknowledged Jessica as his daughter or was adjudged by a court to be her parent. (In fact, he had no chance to acknowledge his paternity: he was killed the same night Jessica's mother told him she thought she was pregnant.) He never lived with Jessica's mother and never contributed to Jessica's support. Therefore, Jessica cannot use the (h)(3)(C) option to establish her right to benefits. Her only recourse is to prove that Wisconsin courts would determine her to be a child entitled to take intestate personal property of Jeffrey Blakley. The fact that a Wisconsin court has done just that might be thought to be the end to the matter. The Secretary has more than an indication how the Wisconsin courts might view Jessica's entitlement to share in her father's estate; she has an actual decision from a Wisconsin court. However, the Secretary has chosen not to accept the circuit court decision as definitive. She continues to take the position that posthumous paternity actions are not permitted under Wisconsin law and that the state trial court erred in holding otherwise.

■ The Secretary contends that until the highest state court has ruled on a particular area of law, she is not required to follow the holding of a lower state court in an action to which she was not a party. In support of her position, she cites a case from the Sixth

Circuit, *George v. Sullivan,* 909 F.2d 857, 860–61 (6th Cir.1990) and a district court case from the Fourth Circuit, *Rogers v. Sullivan,* 795 F.Supp. 761, 764–65 (E.D.N.C. 1992). *George* holds that the Secretary is not bound by a state trial court holding in a proceeding to which she is not a party, but adds that she "is not free to ignore an adjudication of a state trial court where it is fair and consistent with the law as enunciated by the highest court of the State." *George,* 909 F.2d at 860. *Rogers* holds the same, but notes that the Court of Appeals for the Third Circuit has held that as a general matter the Secretary should follow lower state court rulings if they are "'fair and logical and no authoritative decision to the contrary exists,'" *Rogers,* 795 F.Supp. at 765 (quoting *Legory v. Finch,* 424 F.2d 406, 410 (3d Cir. 1970)), and adds that "some degree of deference should be accorded lower court holdings, particularly when the case concerns an area traditionally governed by state law." *Id.* (citing *Dennis v. Railroad Retirement Board,* 585 F.2d 151, 154 (6th Cir.1978)). In this case, however, the Wisconsin supreme court has ruled on posthumous paternity actions. I conclude that the Rock County court's determination of Jessica's intestacy rights conformed with Wisconsin law as the state supreme court has interpreted it. Thus, it is unnecessary to reach the Secretary's contention that she is not required to follow the holdings of lower state courts.

Understanding this case requires a trip through the intricacies of Wisconsin's statutes on paternity actions, survival of causes of action, and intestacy and a review of the relevant state appellate cases. A beginning point is *In re Estate of Blumreich,* 84 Wis.2d 545, 267 N.W.2d 870 (1978), *appeal dismissed sub nom. Caldwell v. Kaquatosh,* 439 U.S. 1061, 99 S.Ct. 822, 59 L.Ed.2d 26 (1979), in which the Supreme Court of Wisconsin decided that a paternity proceeding could not be maintained posthumously against a putative father. Thereafter, the legislature amended Wis.Stat. § 767.01 to grant the circuit courts jurisdiction to hear posthumous paternity actions and created § 767.45, which lists the persons authorized to bring a paternity action (the child, the natural mother of child, the man presumed or alleged to be child's father or alleging himself to be child's father, the personal representative of any of these persons and the legal or physical custodian of the child). Despite these changes, when the state court of appeals considered the issue in *In re Paternity of N.L.B.,* 140 Wis.2d 400, 411 N.W.2d 144 (Ct.App.1987), it held that the legislation did not permit paternity actions to be maintained against a deceased putative father. The court held that *Estate of Blumreich,* 84 Wis.2d 545, 267 N.W.2d 870, remained good law and that causes of action for paternity did not survive the death of the alleged father so as to allow a suit by the natural mother on behalf of the child against the parents and personal representative of the deceased putative father. Noting that the legislature is presumed to act with full knowledge of the existing law, the court of appeals found conclusive the fact that although the legislature amended the jurisdictional statute and identified the persons who could bring paternity actions, it did not add paternity actions to the actions specified in Wis.Stat. § 895.01 as surviving the death of the defendant.

One might argue that the court of appeals' reading of the legislation makes the changes in Chapter 767 meaningless, thereby violating the venerable canon of construction that legislation is to be interpreted to give effect to all of its provisions. The legislature amended § 767.01, entitled "Jurisdiction," to add to the provision that an action under § 767.45 [for determination of paternity or rebuttal of the presumption of paternity] "may be brought in the county in which the child or the alleged father resides or is found," the provision that "if the father is deceased, [the action may be brought in the county] in which proceedings for probate of his estate have been or could be commenced." To hold that such actions may never be brought is to read this new language out of the statute. Nevertheless, *N.L.B.* stood as the last word on the subject of paternity actions until the state supreme court decided *Le Fevre v. Schrieber,* 167 Wis.2d 733, 482 N.W.2d 904, in 1992. In *Le Fevre,* the mother of the posthumous child of an accident victim joined with the victim's personal representative (the victim's father)

to bring an action in a state court for adjudication of paternity. The mother wished to pursue a wrongful death action against the driver of the other car involved in the accident. When the circuit court in which the accident case was pending refused to recognize the validity of the paternity determination by another circuit court, the mother appealed and the court of appeals certified the appeal to the supreme court. The supreme court held that the circuit court had acted erroneously in refusing to recognize the determination of paternity. The lower court had relied on *N.L.B.* in reaching its decision; the supreme court held that *N.L.B.* was distinguishable because it involved a paternity action brought against the estate of the putative father, whereas *Le Fevre* involved a posthumous paternity proceeding brought by the personal representative of the deceased, an action the supreme court characterized as "clearly allowed under the plain meaning of sec. 767.45(1), Stats." *Id.* at 738, 482 N.W.2d at 906. The court added that the state's interest in *N.L.B.* and *Blumreich* "was more compelling than in [*Le Fevre*]" since those actions were brought against the estate and were contested." *Id.*

*Le Fevre* is a difficult decision to parse. One way to construe it is that the court relied on the status of the person bringing the action, so that only an action brought by the personal representative is permissible. However, this requires a reading of Wis.Stat. § 767.45(1) that is not supported by the language of that statute. Section 767.45(1) makes no distinction among the persons permitted to bring a paternity action and gives no indication that the personal representative would have an exclusive right over the child or the child's natural mother to bring a posthumous paternity action.

It is unclear why the state supreme court seemed to distinguish *Le Fevre* from *N.L.B.* on the ground that the latter was brought against the estate and the former was not. Nothing in the *N.L.B.* decision indicates that it was brought against an estate; it is characterized as being a petition for adjudication of paternity. *N.L.B.*, 140 Wis.2d at 401, 411 N.W.2d at 144. Any such distinction would be hard to justify, given that there was an estate at issue in *Le Fevre*, albeit one that may have been limited to one asset: the wrongful death action against the other driver. Establishing that the victim was the child's father would give the child sole claim to any award secured by the wrongful death action. Wis.Stat. § 895.04.

The reasonable conclusion to draw from the *Le Fevre* decision is the one the magistrate drew. The critical difference between the outcome in *N.L.B.* and *Le Fevre* is the absence of a contest between the potential intestate heirs of the estate and the putative child of the decedent. It then makes sense that the court would emphasize the fact that *Le Fevre* involved a paternity action brought by the personal representative, simply because that is the strongest indication that the paternity action is not contested by the estate.

Despite the supreme court's statement in *Le Fevre* that it was distinguishing the case from *N.L.B.*, (and therefore not overruling *N.L.B.*), the opinion must be read as overruling *N.L.B.* to the extent that the court of appeals had read § 895.01 as providing no authority for *any* action for paternity to be brought posthumously. Under the supreme court's reading, such actions may be brought so long as they are not contested.

■ The Secretary argues that plaintiff obtained nothing more from the state trial court than a determination of paternity, which does not establish Jessica's right to inherit under Wisconsin law. She maintains that the magistrate judge erred in concluding that *Le Fevre* holds that "where the deceased father's estate suffers no loss from the paternity ruling because some third party is the actual and ultimate target of the litigation, the action would be allowed." Report at 14. I agree with the Secretary to the extent that the determination must be whether the putative child of the deceased wage earner can recover from the estate. Congress intended the Social Security Trust Fund to be treated as if it were the estate itself; if the child cannot inherit from the estate, the child is not eligible for Child's Insurance Benefits. As should be clear from the preceding discussion, however, I am satisfied that Jessica can inherit from Jeffrey Blakley. I disagree

with the magistrate judge in his interpretation of *Le Fevre* as limited to situations in which a third party is the actual target of the litigation because *Le Fevre* did involve a claim against the putative father's estate, an asset of which was the wrongful death claim. Indeed, it is probable that the money at issue that would pass by intestacy in *Le Fevre* was significantly greater than the money at issue in most posthumous paternity claims.

The Secretary makes the additional argument that it was error for the magistrate judge to find that plaintiff satisfies the prerequisites of § 216(h)(2)(A). She argues that plaintiff received a favorable ruling from the Rock County court only because there was no estate to contest her petition; that it was not Congress's intent that the operation of § 216(h)(2)(A) would depend on the existence or non-existence of an estate to contest a paternity proceeding; and that the test is supposed to be a uniform test that asks whether the child could inherit if there were an estate. This argument misapprehends both the significance of *Le Fevre* and the magistrate judge's proposed conclusions of law. The question is not whether there is any estate but whether the estate contests the paternity claim. The state supreme court may have had due process concerns in mind when it held that only non-contested posthumous paternity actions could be brought under § 767.45. For whatever reason, it has held that non-contested paternity actions may be brought posthumously In Wisconsin. Plaintiff brought an action that was uncontested in fact although it was brought nominally against Jeffrey Blakley's parents.

I conclude that the Rock County circuit court made a logical and valid interpretation of the supreme court's holding in *Le Fevre* when it permitted plaintiff to bring the action to determine the identity of Jessica's father and that its ruling on Jessica's parentage is definitive. The Secretary disagrees with the trial court's ruling, but her real dispute is with the holding in *Le Fevre*.

■ The next question is the procedure to be followed in correcting the Secretary's erroneous conclusion of law. The magistrate judge believed that the holding in *Eads v.*

*Secretary of Health and Human Services,* 983 F.2d 815 (7th Cir.1993), made it necessary to remand the case to enable the agency to make factual findings on paternity. In *Eads,* the court of appeals held that in reviewing a decision of the Secretary, a district court may not consider evidence submitted for the first time to the Appeals Council if the council has denied a request for review. In this case, the evidence of the state circuit court's determination of Jeffrey Blakley's paternity and Jessica's entitlement to intestacy benefits was not submitted to the agency until after the administrative law judge had ruled on Jessica's entitlement to benefits. Although the overriding determination is one of law, I agree that additional fact-finding is required to make the record complete. In any event, such fact-finding would be necessary to determine the starting date of Jessica's eligibility for benefits.

### ORDER

IT IS ORDERED that the findings of fact and conclusions of law proposed by the United States Magistrate Judge in the report and recommendation entered herein on February 21, 1995 are ADOPTED as the court's own, with the one exception of the magistrate judge's proposed conclusion that *Le Fevre* is to be read as allowing paternity actions only in situations in which third parties are the actual targets of the litigation. FURTHER, IT IS ORDERED that this matter is remanded to the defendant Secretary of Health and Human Services for the making of findings of fact on the issue of paternity, a substantive finding of Jessica's right to take under Wisconsin's intestacy laws, a redetermination of Jessica's eligibility for Child's Insurance Benefits and a determination of the date on which eligibility commenced.