JAMES WILLIAM HILT, Appellant, *v.* THE STATE
OF NEVADA, Respondent.

No. 7810

October 23, 1975                    541 P.2d. 645

*John F. O'Reilly,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, *George E. Holt,* District
Attorney, *Dan M. Seaton,* Deputy, and *Frank Cremen,*
Deputy, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

A jury found appellant James William Hilt guilty of first degree murder and set his penalty at life imprisonment with possibility of parole. The trial court denied him a new trial, and this appeal follows.

Hilt was convicted of the murder of Lee Page Merkle, whose body was found the morning of December 26, 1971, in the parking lot of Clark County's outdoor sports stadium located between Henderson, Nevada and the Las Vegas, Nevada metropolitan area. The body contained nine gunshot wounds made from three different weapons: a 9 millimeter, a .380 caliber and a .22 caliber.

Late in 1972, Hilt, Gordon Overton and Edward D. Eckert were separately arrested and charged with the murder. At trial Hilt testified in his own behalf. Overton testified for the prosecution, and Eckert did not testify.

According to the testimony of appellant and Overton, all three departed in appellant's car on the evening of December 23, 1971, from Kansas for Las Vegas, Nevada, arriving there the next day. Each had a gun in his possession. Appellant had

a 9 millimeter Smith and Wesson and Eckert had a .380 Browning automatic. Appellant had furnished the money to purchase both guns with Eckert signing the required Federal Arms Regulations forms. Overton had his father's .22 derringer. On Christmas day they drove around town gambling and sightseeing and finally proceeded to Henderson, Nevada. At approximately 1:30 the morning of December 26, 1971, while returning on the Boulder Highway to Las Vegas, they picked up a hitchhiker at Eckert's direction. The hitchhiker, Merkle, got into the back seat with Eckert where Eckert held a gun to his head and threatened him. Also at Eckert's direction, appellant turned off the highway and onto the access road to the sports stadium and stopped. Eckert forced Merkle to remove his boots, get out of the car, lie on his stomach and put his hands over his head; then Eckert shot Merkle once in the head, stopped for a second to laugh, and shot Merkle three or four more times.

From this point appellant's and Overton's testimony differs. Overton testified that after Eckert had finished shooting he told appellant to shoot Merkle because they all needed to shoot into the body. Hilt hesitated for a second before he went over and shot three times, then said to Overton, "Come on, why don't you shoot him?" Appellant then gave the .22 derringer to Overton who fired two shots into the body while Eckert held a gun to Overton's head. Appellant testified that after Eckert shot a total of four or five times point blank at Merkle's head, Eckert stated they all needed to get involved and motioned his gun at appellant while Overton was refusing. Appellant then fired two shots into the body because he was afraid Eckert would shoot him too. Appellant testified further that he thought Merkle was already dead when he was forced to fire.

Alfa Ann Fox, who had lived with appellant, testified in state's rebuttal that in February, 1972, Hilt told her he and some other men had picked up a hitchhiker while in Las Vegas and had decided to rob him. After they got a few cents off the guy, one of the men was kicking him in the head, and appellant said to kill him or be done with it but quit kicking him. The man went ahead and shot him, and the rest of them shot him a couple of times and took his personal belongings and boots. She testified appellant stated the boots were too small, but she could not remember his stating what happened to them. She did remember his saying that the hitchhiker had driven the car, knew their names, and might even have known the license plate number.

Appellant's brother, his father, and a friend all testified that appellant had expressed fear of Eckert. Appellant's father testified regarding two phone calls, one on December 25, 1971, from Las Vegas, in which appellant stated he had some problems, and the other on December 27, 1971, from Albuquerque, New Mexico, in which he warned that if he wound up in a ditch, the name would be Eckert.

Appellant contends that the trial court committed error in (1) forcing the defendant to become a witness at his trial, (2) aligning itself with the prosecution, (3) allowing the prosecution to present the testimony of Alfa Ann Fox in state's rebuttal and (4) allowing the prosecution to present rebuttal testimony which was, in part, cumulative from witnesses whose names did not appear on the attachment to the information. Appellant also contends that the prosecutor's comments made during the trial prejudiced his rights, the conduct of his own trial counsel deprived him of a fair trial and his right to counsel, and the trial court incorrectly denied his motion for a new trial. He further claims that the verdict of the jury was not supported by substantial evidence and is contrary to law and weight of the evidence, the aggregate of errors committed at the trial violates the constitutional requirements of due process, and the reversal of Eckert's conviction by this court and Eckert's subsequent acquittal dictate a reversal.

1. After a defense witness left the stand the trial judge stated, "We will take a short recess at this time before we begin with the next witness. I assume it is going to be the defendant, Mr. Hilt?" Appellant contends this statement denied him his fundamental right to not testify at his trial if that were his decision.

Both the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Nevada Constitution guarantee the fundamental right that no person shall be compelled to testify against himself. However, there is no indication from the record that appellant chose not to testify. Defense counsel answered affirmatively to the trial judge's question, and appellant took the stand immediately after the short intervening recess. Under these circumstances, failure to move to strike, move for a mistrial, assign misconduct or request an instruction precludes appellate consideration. Clark v. State, 89 Nev. 392, 513 P.2d 1224 (1973).

2. Appellant next contends the trial judge was guilty of misconduct and denied him a fair and impartial trial by aligning himself with the prosecution, applying different procedural

rules to the prosecution than to the defense, and commenting on the evidence. In Kinna v. State, 84 Nev. 642, 447 P.2d 32 (1968), this court disapproved of trial judge's comments and conduct which are calculated to mislead jurors or prejudice a party.

We have reviewed the instances cited by appellant and have failed to find any design of the trial court to align itself with the prosecution. The judicial conduct of which appellant complains did not deny him his constitutional right to a fair and impartial trial. Kinna v. State, supra.

3. Appellant contends the testimony of Alfa Ann Fox offered in the rebuttal portion of the state's case properly belonged within the state's case in chief because it impeached the testimony of the state's own witness Overton and was the only evidence that could justify the "felony murder doctrine" instruction.

Overton testified in state's case in chief that Eckert forced Merkle to remove his boots and after the shooting stated, ". . . [A]ll the guy had on him was 22 cents." Alfa Ann Fox merely corroborated Overton's testimony which had raised the fact question as to whether Merkle was robbed. Appellant testified that he never told anyone he had picked up a hitchhiker to rob him or that the hitchhiker could identify Eckert, Overton, and himself or his car. He testified further that he did not know of anyone's trying on the boots and could not remember what happened to them. Alfa Ann Fox was properly called in rebuttal to appellant's testimony.

Even if her testimony should have been more properly introduced during the prosecution's case in chief, it is within the trial court's discretion to admit evidence during rebuttal offered in support of a party's original cause. This court will not review that discretion in the absence of gross abuse. Walker v. State, 89 Nev. 281, 510 P.2d 1365 (1973), citing State v. Lewis, 50 Nev. 212, 255 P. 1002 (1927). There was no specific objection to her testimony being offered in rebuttal. Where an appellant fails to specifically object to testimony elicited during trial we do not consider his contention as a proper assignment of error. Septer v. Warden, 91 Nev. 84, 530 P.2d 1390 (1975); Moss v. State, 88 Nev. 19, 492 P.2d 1307 (1972); Smithart v. State, 86 Nev. 925, 478 P.2d 576 (1970); Wilson v. State, 86 Nev. 320, 468 P.2d 346 (1970).

At trial defense counsel objected to Alfa Ann Fox's testimony upon the ground that she was appellant's common-law wife under the law of the state of Kansas and any communication to her was privileged. The Kansas Supreme Court has long recognized the validity of common-law marriages. The elements essential to establish a common-law marriage relationship are the capacity to marry, a present marriage agreement, and holding out of each other as husband and wife to the public. In Re Estate of Mazlo, 505 P.2d 762 (Kan. 1973); Schrader v. Schrader, 484 P.2d 1007 (Kan. 1971); Sullivan v. Sullivan, 413 P.2d 988 (Kan. 1966); Gillaspie v. E. W. Blair Construction Co., 388 P.2d 647 (Kan. 1964). The trial court found Alfa Ann Fox never intended to be married by common law to appellant. Therefore, there could be no present marriage agreement or understanding they were married, and her testimony was properly admitted.

4.  Appellant submits on appeal that the trial court erred in allowing four police officers to testify in state's rebuttal that they saw appellant and Eckert together in the chow hall or cell block while both were incarcerated in the Clark County jail. Appellant contends that the trial judge should have used his power to limit the number of witnesses who testified to the same issue. He contends further that three of the four officers' names did not appear on the attachment to the information nor were they furnished pursuant to the motion for discovery. However, he failed to specifically object to the number of witnesses testifying to essentially the same issue or bring the trial court's attention to the fact that only one of the four witnesses' names had been furnished. We will not consider these contentions as a proper assignment of error. Septer v. Warden, supra; Moss v. State, supra; Smithart v. State, supra; Wilson v. State, supra.

5.  Appellant cites nine instances in which he contends the prosecutor's remarks prejudiced his rights. Of the nine only one was objected to at the trial. The failure to object to questionable statements of the prosecutor at the time they were made precludes this court's consideration. Septer v. Warden, supra; Walker v. State, 89 Nev. 568, 516 P.2d 739 (1973); Sorce v. State, 88 Nev. 350, 497 P.2d 902 (1972); Bonnenfant v. State, 86 Nev. 393, 469 P.2d 401 (1970). The trial court overruled appellant's objection to the prosecutor's statement:

"I have got dogs at home I wouldn't shoot them and leave them out in the parking lot. . . ." The prosecutor's remark was questionable, and improper argument is assumed to be injurious; but where the case is as free from doubt, as here, this court will not reverse. Riley v. State, 91 Nev. 196, 533 P.2d 456 (1975), citing Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966).

6. The trial court's denial of appellant's motion for a new trial is cited by him as error. Affidavits signed by appellant's friends, relatives, and acquaintances regarding threats Alfa Ann Fox had made against appellant were produced in support of the motion. One affidavit alleged she said, "I hate you!" to appellant during preliminary hearing in Justice Court. Another concerned threats she made while visiting appellant in prison. Other affidavits alleged she had made statements that she would pay him back.

The trial court ruled that facts alleged in the affidavits were insufficient to justify granting a new trial, that defense counsel was well aware of the facts during trial and that some of the statements were made to appellant himself. In Oliver v. State, 85 Nev. 418, 456 P.2d 431 (1969), this court detailed the requirements necessary for obtaining a new trial based on newly discovered evidence and held that under NRS 176.515, which was amended in 1967 by the legislature, such evidence must be so newly discovered that it would not with reasonable diligence have been discovered and produced at trial. This requirement was not met by appellant.

7. Appellant alleges that the verdict of first degree murder is not supported by substantial evidence and is contrary to law and weight of the evidence. If there is substantial evidence to support the jury verdict this court will not disturb it on appeal. Azbill v. State, 88 Nev. 240, 495 P.2d 1064 (1972); Collins v. State, 87 Nev. 436, 488 P.2d 544 (1971); Williams v. State, 87 Nev. 230, 484 P.2d 1088 (1971). This record contains an abundance of evidence, including appellant's testimony, which supports the jury's verdict.

8. After appellant's trial Edward Eckert's conviction of first degree murder was reversed,[1] and at a retrial he was acquitted. Appellant now contends he was deprived of a fair trial because the jury was informed of Eckert's conviction.

[1]Eckert v. State, 91 Nev. 183, 533 P.2d 468 (1975).

Eckert did not testify at appellant's trial, and the parties stipulated that the court inform the jury that Eckert had been found guilty of first degree murder. In addition, Eckert's conviction was mentioned a number of times, and his name was continually before the jurors. Appellant's contention is not a valid assignment of error. There was never any objection to this information being given the jurors. In fact, defense counsel mentioned the conviction first, when in opening argument he stated he would show that Eckert had been tried in this case and had been convicted of first degree murder.

A guilty plea or conviction of one person is not admissible against another charged with the same offense. See State v. Riddall, 446 P.2d 517 (Ore. 1968). However, where such evidence is introduced by defense counsel as part of the trial strategy the rule has no application. People v. Burch, 317 N.E.2d 136 (Ill.App. 1974). Eckert's conviction tended to support appellant's theory of his case and his testimony concerning Eckert's role in the murder of Merkle. Appellant cannot now contend that error was committed by informing the jury of Eckert's conviction when any information to the jury about that conviction inured to appellant's benefit and was not prejudicial to him.

The conviction of one accomplice or defendant is not reversible merely because another accomplice or codefendant is subsequently acquitted. Neal v. State, 506 P.2d 936 (Okl.App. 1973).[2] ". . . [W]here there is more than one defendant in a criminal action the innocence or guilt of each must depend upon the evidence introduced against him and if convicted the lack of evidence or the miscarriage of justice insofar as his codefendant is concerned is immaterial." People v. Taylor, 199 P.2d 751, 754–755 (Cal.App. 1948).

A review of the record fails to support appellant's claim that his attorney deprived him of a fair trial and his right to counsel. Cline v. State, 90 Nev. 17, 518 P.2d 159 (1974). Appellant's remaining contention that the aggregate of errors

---

[2]See also State v. Jordan, 462 P.2d 799 (Ariz. 1969); People v. Clark, 60 Cal.Rptr. 58 (Cal.App. 1967); State v. Remington, 515 P.2d 189 (Ore.App. 1973); State v. Orange, 478 P.2d 220 (Wash. 1969).

committed at the trial violated his constitutional rights is without merit.

The judgment of the trial court is affirmed.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.