**In re Lowell C. GLASCO, Deceased.**

**No. 16608.**

Court of Civil Appeals of Texas, San Antonio.

June 3, 1981.

Rehearing Denied July 1, 1981.

---

Hattie E. Briscoe, San Antonio, for appellant.

Robert C. Cowan, Sr., San Antonio, for appellee.

ESQUIVEL, Justice.

This is a suit to determine heirship.

This case arose as a probate matter. Appellee, Geneva Hall, filed an application to declare heirship in the administration of the estate of Rev. Lowell C. Glasco, Deceased, hereinafter referred to as "decedent." Appellee claimed ownership to part of the estate as the surviving common-law wife of decedent. The case was tried to the court without a jury. The court rendered judgment that appellee was the surviving common-law wife of decedent and awarded her all of the community property, all of decedent's separate personal property and one-half of decedent's separate real property. The appellants, who were the collateral kindred of decedent in the whole and half blood and descendants, were awarded the other one-half of decedent's separate real property. Appellants appeal from said judgment.

Appellants raise two points of error:

(1) The error of the Court in declaring Geneva Hall the surviving common-law wife of Rev. Lowell C. Glasco, Deceased, when there was insufficient evidence to support the findings of the Court, and the Judgment was against the great weight and preponderance of the evidence so that it was manifestly unjust and contrary to law.

(2) The error of the Court in awarding Geneva Hall all of the community property of Rev. Lowell C. Glasco, all of the separate personal property and one-half of the separate real property of deceased when there was no evidence before the court by Geneva Hall as to what kind of property the deceased died seized with. That the inventory in the estate showed all property to be the separate property of deceased [sic].

In their points of error appellants contend (1) that the evidence was factually insufficient to support the declaration of the trial court that appellee was the common-law wife of decedent, and (2) that the trial court erred in its distribution of the property of decedent to the parties.

██ The record before us contains a statement of facts but no findings of fact or conclusions of law. The record is silent whether such findings of fact or conclusions of law were requested. We therefore must rely upon certain implied findings which the judgment of the trial court necessarily carries with it. Tex.R.Civ.P. 299; *Hellyer v. Wig Imports, Inc. of the Southwest*, 458 S.W.2d 492, 495 (Tex.Civ.App.—Eastland 1970, no writ); *Alamo Express, Inc. v. Browning Mineral and Ore Company*, 457 S.W.2d 588, 590 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.).

We will first discuss the subject of the common-law marriage and thereafter, the subject of the distribution of the property of the estate.

### THE COMMON–LAW MARRIAGE

In order to sustain the existence of a common-law marriage the implied findings of the trial court must be those facts which establish the three elements of a common-law marriage. The cases and now the statutes in Texas set out the three necessary

elements to establish a common-law marriage as (1) an agreement presently to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. Tex.Fam. Code Ann. § 1.91(a)(2) (Vernon 1975); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978); *Humphreys v. Humphreys*, 364 S.W.2d 177, 178 (Tex.1963); *Smith v. Smith*, 607 S.W.2d 617, 621 (Tex.Civ.App.—Waco 1980, no writ).

■ The agreement to be husband and wife may be implied and need not be an express agreement, and such an agreement may ordinarily be inferred from the evidence which establishes the other two constituent elements of a common-law marriage. Tex.Fam.Code Ann. § 1.91(b) (Vernon 1975); *Humphreys v. Humphreys*, 364 S.W.2d at 178; *Reilly v. Jacobs*, 536 S.W.2d 406, 408 (Tex.Civ.App.—Dallas 1976, writ ref'd n. r. e.); *Rosales v. Rosales*, 377 S.W.2d 661, 664 (Tex.Civ.App.—Corpus Christi 1964, no writ).

A review of the entire evidence admitted by the trial court reveals the following undisputed testimony. Decedent was a pastor of two churches up to the time of his death. He did this for nearly two decades. One of these churches was located in San Antonio and the other was located in Sequin. In the beginning, decedent would preach every Sunday in his church in San Antonio and two Sundays out of every month he would preach in Seguin. Thereafter, for the sixteen years prior to his death, decedent would on every Sunday first preach in San Antonio and then travel to Seguin and preach there. During these years, decedent was a resident of San Antonio and would stay at his house while in San Antonio. While in Seguin decedent would always stay at Appellee's house. Appellee was a member of decedent's Seguin congregation from the beginning. Appellee never adopted or used the name of decedent. Decedent died alone in his house in San Antonio; he died intestate and left no surviving parents, and no child or children or their descendants.

The Rev. Emmanuel Carpenter, a disinterested witness, testified that he had known decedent and appellee in Seguin for twenty-six years. Whenever decedent was in Seguin, the witness Carpenter testified that the decedent could always be contacted at appellee's house. The witness Carpenter further testified that decedent "carried her wherever he went" and that because of their actions in public he considered decedent and appellee as husband and wife. Ms. Ernestine Clack, another disinterested witness, testified that she had known decedent and appellee for twenty-nine years. The witness Clack testified further that she considered the appellee as wife of the decedent and that other members of the congregation looked upon them as husband and wife. The witness Clack testified further that decedent would spend the night at appellee's house and that he lived there while in Seguin. Ms. Veda Taylor, another disinterested witness, testified that she had known decedent and appellee for at least thirty years. The witness Taylor further testified that she always saw them together in Seguin and that she never had seen decedent with another woman or appellee with another man. The witness Taylor further testified that decedent and appellee did not keep secret their relationship and that she considered them as husband and wife. Appellee testified that decedent introduced her to others as Mrs. Glasco. Appellee testified without objection that she and decedent entered into an agreement with each other to be married about fifteen years prior to his death, that they held themselves out to the public as man and wife, and that people knew them as husband and wife. Appellee further testified that they had agreed "he'd keep his name and I'd keep mine." Some of the appellants and two disinterested witnesses testified that they did not recognize the appellee as the wife of decedent and that no widow was listed on decedent's funeral program. There was no testimony from any of appellants' witnesses or appellants themselves disputing any of the actions of decedent and appellee in Seguin.

■ We hold that there was sufficient evidence to uphold the trial court's implied

findings that the parties agreed to be husband and wife, that they lived together as husband and wife and held each other out to the public as such.

Appellants argue that appellee did not offer "conclusive evidence as required by law to establish cohabitation as common-law husband and wife." This argument has no merit in a civil action. Such law does not require conclusive evidence but rather it requires a preponderance of the evidence. *Green v. Meadows*, 527 S.W.2d 496, 499 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *See Burns v. American Nat. Ins. Co.*, 280 S.W. 762, 763 (Tex.Com. App.1926, judgment adopted). The test is not conclusiveness of the evidence but whether or not the evidence is factually insufficient, i. e., the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Appellants also argue that appellee's retention of her former name and failure to adopt or use the name of decedent was an admission that there was no common-law marriage. We disagree. Appellee testified that she agreed to retain her name for Social Security and Medicare purposes. Retention by a woman of her former name and social security number has been held not to have been an admission that there was no common-law marriage. *McIlveen v. McIlveen*, 332 S.W.2d 113, 116 (Tex.Civ.App.—Houston 1960, no writ).

The effect of the entire testimony in this case was left to the sound discretion of the trial court. The trial court encountered the parties and the witnesses, observed their demeanor and personalities, judged their credibility, interpreted the truth and reality, and finally drew upon its storehouse of human living and experience before endeavoring to judicially decree its judgment. We therefore find that all of the elements constituting the necessary requirements to prove a common-law marriage have been established and there is sufficient evidence to uphold the trial court's implied findings. In such case, where there is sufficient evidence to support such findings, it will be conclusively presumed that all fact issues were found by the trial court in such a way to support the judgment. *Seydler v. Herder*, 361 S.W.2d 411, 414 (Tex.Civ.App.—El Paso 1962, writ ref'd n. r. e.). Appellants' point of error number one is overruled.

## THE PROPERTY

The appellants contend in their point of error number two that the trial court erred in its distribution of the property to all the parties because "there was no evidence before the court by Geneva Hall as to what kind of property the deceased died seized with." This contention is without merit. In a proceeding to determine heirship, such as this case before us, the trial court is under the sole duty to determine the heirs and only heirs of the decedent, and their respective shares and interests, under the laws of this State, in the estate of such decedent. Tex.Prob.Code Ann. § 48(a) (Vernon 1972). "Heirs" denote those persons, including the surviving spouse, who are entitled under the statutes of descent and distribution to the estate of a decedent who dies intestate. Tex.Prob.Code Ann. § 3(o) (Vernon 1956). The judgment of the court in a proceeding to determine heirship shall declare the names and places of residence of the heirs of the decedent and their respective shares and interests in the real and personal property of such decedent. Tex. Prob.Code Ann. § 54 (Vernon 1972).

The rights of appellee as the common-law wife of decedent are in all respects precisely the same as though the marriage had been duly solemnized under the prescribed forms of law. This is true whether those rights pertain to the control or disposition of the separate property, the community property or whether they affect its descent. Speer, Marital Rights in Texas § 44 (3rd ed. 1961).

We agree with the judgment of the trial court that appellee as surviving common-law wife was entitled to all property belonging to the community estate. Upon dissolution of the marriage relation by

death, all property belonging to the community estate of the husband and wife shall go to the survivor. Tex.Prob.Code Ann. 45 (Vernon 1956).

The trial court awarded the appellee all of decedent's separate personal property, and one-half of decedent's separate real property. The trial court awarded the other half of decedent's separate real property to appellants as follows: to the surviving brother and two sisters of decedent a 1/10th share each; and to the sole descendant of a deceased half-sister of decedent a 1/20th share; and to the son and daughter of a deceased half-sister of decedent a 1/40th share each. We agree with the trial court division of the property.

Where any person having title to any estate, real, personal or mixed, other than a community estate, shall die intestate as to such estate, and shall leave a surviving husband or wife and no child or children or their descendants, the surviving husband or wife shall be entitled to all the personal estate, and to one-half of the lands of the intestate, without remainder to any person, and the other half shall pass and be inherited according to the rules of descent and distribution; provided, however, that if the deceased has neither surviving father nor mother nor surviving brothers or sisters, or their descendants, then the surviving husband or wife shall be entitled to the whole of the estate of such intestate. Tex.Prob. Code Ann. § 38(b)(2) (Vernon 1956). When the intestate's brothers or sisters or any other relatives of the deceased standing in the first or same degree alone come into the distribution upon intestacy, they shall take per capita, namely: by persons; and when a part of them being dead and a part living, the descendants of those dead shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive. Tex.Prob.Code Ann. § 43 (Vernon 1956). In situations where inheritance passes to the collateral kindred of the intestate, if part of such collateral kindred be of the whole blood, and the other part be of the half blood only, of the intestate, each of those of half blood shall inherit only half as much as each of those of the whole blood. Tex.Prob.Code Ann. § 41 (Vernon 1956).

All of appellants' points of error having been overruled, judgment of the trial court is affirmed.