**Louisa ORR, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. CV–R–85–538–ECR.**

United States District Court, D. Nevada.

Dec. 5, 1986.

William A. Maddox, U.S. Atty. by Shirley Smith, Asst. U.S. Atty., Reno, Nev., for defendant.

James C. Van Winkle, Reno, Nev., for plaintiff.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

The appellant, Louisa Orr, appeals the decision of the Appeals Council of the Department of Health and Human Services, Social Security Administration (the "Appeals Council"), denying her lump-sum survivor's benefits. The decision of the Appeals Council, which reversed the administrative law judge's decision in favor of the appellant, represents the final decision of the Secretary of Health and Human Services (the "Secretary") subject to judicial review by this Court. 42 U.S.C. § 405(g) (1983). *See also Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir.1985).

Initially, it should be noted that the United States Magistrate has recommended that this case be dismissed pursuant to Fed.R.Civ.P. 41(b) because the parties did not file motions and points and authorities in accordance with a court order. The appellant claims that she failed to comply with the order because of an oversight, and, that since the papers are presently on file with the Court, the case should not be dismissed. Although the Magistrate was justified in recommending dismissal, the Court finds that the interests of justice are better served by deciding this case on the merits.

## FACTS

The facts of this case are not in dispute. Mr. Julian Orr, the wage earner, was domiciled in Nevada at the time of his death in August of 1983. In September, 1983, Louisa Orr filed an application for lump-sum death benefits under Title II of the Social Security Act claiming that she was the widow of the wage earner.

The sole issue in this case is whether Louisa Orr was legally married to the wage earner at the time of his death. Although the two were never ceremonially married, Mrs. Orr and the wage earner did live together from 1961 to 1963 in Texas and from 1963 to 1983 in California and Nevada. The appellant testified that during the time she lived with Mr. Orr she used the name Mrs. Orr, the two considered themselves to be married and they held themselves out as such. The record also shows that Mrs. Orr's four daughters lived with the couple and considered Mr. Orr to be their father.

The appellant knew, however, that Mr. Orr had married Bernice C. Orr in 1943 and that he did not obtain a legal divorce until December of 1981. From 1953 on, however, Mr. Orr and his first wife were legally separated. The appellant and her daughter testified that Mr. Orr divorced his first wife with the intention of marrying Louisa and that Mr. Orr had been shopping for wedding rings.

After the divorce, the Orrs made two or three trips to Texas to visit Mrs. Orr's daughters and other relatives. The longest trip to Texas lasted two weeks. During these trips, Louisa used the name Mrs. Orr, Mr. Orr referred to Louisa as his wife, the two held themselves out as husband and wife and they lived together at relatives' homes. In Texas, the two also discussed their plans for a formal wedding with the daughters.

## DISCUSSION

The Appeals Council determined that Mrs. Orr was not entitled to a lump-sum payment because she was not legally married to Mr. Orr. The findings of fact made by the Appeals Council are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (1983). The legal conclusion of the Appeals Council that the Orrs were not validly married, however, is not binding on this court, although it is entitled to great weight. *Thompson v. Weinberger*, 395 F.Supp. 1102, 1105 (E.D.Va. 1975), *rev'd on other grounds*, 548 F.2d 1122 (4th Cir.1976); *Brooks v. Gardner*, 276 F.Supp. 20, 22 (W.D.Va.1967). *See also Kasey v. Richardson*, 462 F.2d 757, 759 (4th Cir.1972).

Under 42 U.S.C. § 402(i) (1983), the widow or widower of a deceased wage earner is eligible for lump-sum death benefits if he or she lived with the decedent at the time of death. As pertinent here, whether an applicant is considered a widow or widower of the wage earner depends on whether the courts of the wage earner's domicile would find that the applicant and the wage earner were validly married at the time of death. 42 U.S.C. § 416(h)(1)(A) (1983).

The appellant contends that by virtue of her trips to Texas, she was the common law wife of Mr. Orr. Nevada does not recognize common law marriages contracted within its borders, *Hay v. Hay*, 100 Nev. 196, 678 P.2d 672, 674 (1984) (*citing* NRS § 122.010 (1986)), but does recognize common law marriages that arise in another state so long as that state's legal requirements are met. *See Hilt v. State*, 91 Nev. 654, 541 P.2d 645, 649 (1975).

The elements of a common law marriage in Texas are governed by statute. Tex. Fam.Code Ann. § 1.91(a)(2) (Vernon's 1975) ("§ 1.91") states that a marriage may be proved by evidence that a man and woman "[1] agreed to be married, and [2] after the agreement they lived together in this State as husband and wife and [3] there represented to others that they were married." The agreement to be married may be inferred from the evidence used to establish the other two elements. Tex.Fam.Code Ann. § 1.91(b) (Vernon's 1975). *See also In re Glasco*, 619 S.W.2d 567, 570 (Tex.Civ. App.1981).

The requirements of § 1.91 prevent sham and unintended marriages and help maintain certainty in marital relations. If common law marriages were judged more leniently, the door would be open to false property claims upon a "spouse's" death and the parties might face unexpected impediments to remarriage. *See In re Estate of Bivians*, 98 N.M. 722, 652 P.2d 744, 750 (1982), *cert. quashed*, 98 N.M. 762, 652 P.2d 1213 (1982). Therefore, in Texas, "[a] claim of common law marriage is closely scrutinized by the courts." *Chatman v. State*, 513 S.W.2d 854, 855 (Tex.Cr.App. 1974) (citations omitted).

Since § 1.91 requires that cohabitation and holding out occur in Texas, the Court must examine the Orr's contacts with that state. Initially, it should be noted that Mr. Orr was not free to marry until 1981. *See* Tex.Fam.Code Ann. § 2.22 (Vernon's 1975). Thus, a valid common law marriage under § 1.91 must have formed, if at all, after Mr. Orr's prior marriage was dissolved.

After December of 1981, the Orrs only visited Texas two or three times for brief periods of time. Apparently, only one Texas court has squarely faced the issue of whether this type of contact with Texas is sufficient to create a common law marriage. In *Kelly v. Consolidated Underwriters*, 300 S.W. 981 (Tex.Civ.App.1927), *aff'd*, 15 S.W.2d 229 (Tex.Com.App.1929), the appellant sought to collect death benefits as the common law wife of a worker who died in an industrial accident. The appellant and the decedent lived together for eighteen years in Louisiana, a state which did not recognize common law marriages. Although the couple maintained their home in Louisiana, the decedent worked temporarily in Texas and was visited there by the appellant for approximately one month. During this visit, the two cohabited and held themselves out as husband and wife. The Texas Court of Civil Appeals found that, since the appellant had no intention of acquiring a residence in Texas, no common law marriage had been formed. It stated:

[T]he law of Louisiana declared the relations between Joe and appellant illegal and meretricious, and their temporary sojourn in the states recognizing common-law marriages did not convert their illegal relations into a lawful marriage. *Id.* at 982.

Although no other Texas cases have spoken on this issue, several other courts have relied on *Kelly* in reaching similar conclusions. *See Marek v. Flemming*, 192 F.Supp. 528, 533 (S.D.Tex.1961); *Etienne v. DKM Enterprises, Inc.*, 136 Cal.App.3d 487, 186 Cal.Rptr. 321, 323–4 (1982); *Matter of Estate of Lamb*, 99 N.M. 157, 655 P.2d 1001, 1003 (1982); *In re Estate of Bivians*, 652 P.2d at 751. *But cf. Matter of Estate of Willard*, 93 N.M. 352, 600 P.2d 298, 300 (1979) (couple which lived in New Mexico but spent considerable time in Texas visiting family had common law marriage). *In re McKanna's Estate*, 106 Cal. App.2d 126, 234 P.2d 673 (1951), was relied on by Ms. Orr and by the administrative law judge to refute these cases. This case, however, is no longer good law. *Etienne*, 186 Cal.Rptr. at 324.

The appellant has clearly not met the requirements of § 1.91. Nevertheless, after additional briefing by the parties, the Court finds that at the time of Mr. Orr's death the Orrs had a valid common law marriage under Tex.Fam.Code Ann. § 2.22 (Vernon's 1975) ("§ 2.22"). Section 2.22 provides:

A marriage is void if either party was previously married and the prior marriage is not dissolved. However, the marriage becomes valid when the prior marriage is dissolved if since that time the parties have lived together as husband and wife and represented themselves to others as being married.

The Texas courts have held that this provision applies to common-law marriages. *Braddock v. Taylor*, 592 S.W.2d 40, 42 (Tex.Civ.App.1979); *Rodriguez v. Avalos*, 567 S.W.2d 85, 86 (Tex.Civ.App.1978).

It is important to point out that § 2.22 is quite different from § 1.91. Section 1.91 determines whether an informal marriage

arose, while § 2.22 measures whether proof of a subsequent validation of an informal marriage is sufficient. *See Durr v. Newman*, 537 S.W.2d 323, 325 (Tex.Civ. App.1976). As discussed above, the requirements of § 1.91 guard against sham or unintended marriages. Once a couple has entered into a marriage, albeit an invalid marriage, it is less likely that these abuses will occur. Therefore, after the necessary showing is made under § 1.91, validation of the prior marriage is judged by § 2.22's less stringent standards. *See Durr*, 537 S.W.2d at 326 (holding that under § 2.22 proof of a new agreement to be married is unnecessary and that the cohabitation and holding out need not occur in Texas).

In this case, therefore, § 1.91 will only be applied in determining whether the Orrs ever entered into a marriage which would have been valid if Mr. Orr had not been previously married. As noted earlier, the couple lived together in Texas between 1961 and 1963. During this time they lived together as husband and wife and held themselves out as such. Since under these circumstances an agreement to be married can be inferred, *In re Glasco*, 619 S.W.2d at 570, the three requirements of § 1.91 are clearly met.

■ The next question to be addressed is whether the marriage became valid after Mr. Orr's divorce. This question is governed by § 2.22 alone. Therefore, Mrs. Orr need only show that after the impediment to marriage was removed, the couple lived together as husband and wife and represented themselves as such. Under Texas law the necessary acts need not take place in Texas, but they must occur in a state where common law marriages can be contracted. *Braddock v. Taylor*, 592 S.W.2d at 42. Therefore, the Orr's common law marriage could not have been validated in Nevada.

In *Taylor*, Janice and David Taylor lived together and held themselves out as husband and wife in Texas. At that time, however, Mr. Taylor was already married. The couple later moved to California and continued their relationship. While a California resident, Mr. Taylor obtained a divorce from his first wife and subsequently died in that state. Based on these facts, the court rejected Ms. Taylor's contention that she was Mr. Taylor's common law wife under section 2.22. Since the validity of a marriage is determined by the law of the place where it is celebrated, and since California did not recognize common law marriages, the court concluded that "no marriage between the deceased and appellee was ever contracted or celebrated in California, nor contracted in Texas after the impediment was removed ..." *Id.*

The Secretary relies on this case to support his argument that Mrs. Orr was not the wife of Mr. Orr. There is, however, one significant difference between *Taylor* and the present case. Unlike the Orrs, the Taylors apparently never returned to Texas or any other common law marriage state after Mr. Taylor's divorce. The Secretary contends that this difference is not significant because under *Kelly* and its progeny no marriage between the Orrs could have arisen during their brief visits to Texas. Unfortunately, this argument misreads § 2.22. As discussed above, because the language, construction and purposes of §§ 1.91 and 2.22 are different, the courts have refused to read the requirements of section 1.91 into § 2.22. Therefore, the *Kelly* line of cases is not necessarily on point.

In fact, a more recent Texas case interpreting section 2.22 implicitly rejects the *Kelly* rule. In *Durr v. Newman, supra,* Shelley Newman claimed that she was the common law wife of Victor Newman and that she should be appointed administratrix of her husband's estate. Although Mr. Newman was previously married, the couple began living together in Texas in 1972 and agreed to be husband and wife in 1974. Throughout most of this time, Mr. Newman's son resided with the couple and Shelley Newman took care of the child.

Mr. Newman left Texas on a business trip in January of 1975 and died in a plane crash before returning home. While on that trip, he was visited in February in Las

Vegas by Mrs. Newman and his son for three days. In Las Vegas, the couple learned that Mr. Newman had been divorced from his first wife on January 17, 1975.

Since Mr. Newman died before returning to Texas, the only time after the divorce that the couple was together was during the three-day visit to Las Vegas. In evaluating Mrs. Newman's claim under § 2.22, the court noted that during the Las Vegas visit the couple had sexual relations and Mrs. Newman was introduced one time as Mr. Newman's wife. The couple's financial relationship and the fact that Mrs. Newman acted as stepmother to Mr. Newman's son were also cited by the court. On the other hand, Mr. Newman had previously expressed his intent not to be married again and Mrs. Newman maintained a bank account under her maiden name.

The Texas Court of Appeals upheld the validity of the marriage under §§ 1.91 and 2.22.* It recognized that the time the couple spent together after January 17th was brief, yet the court held that in assessing whether § 2.22's requirements were met "[t]he short three-day period of time the parties were together is not controlling ..." *Id.* at 326 (*citing Howard v. Howard,* 459 S.W.2d 901 (Tex.Civ.App.1970)). Therefore, the court concluded that, after the prior marriage had been dissolved, the couple lived together as husband and wife and represented themselves to others as being married. *Id.* at 325.

A comparison between *Durr* and the present case convinces the Court that Mrs. Orr was the wife of the decedent. Both couples had significant long-term relationships before the impediment to marriage was removed. While it is true that unlike the Orrs, the couple in *Durr* were Texas residents, the Texas court did not indicate that anything turned on this. Moreover, other aspects of this case more than make up for this difference. First, the Orrs lived together for nearly twenty years more than the Newmans. Second, the Orrs made at least two trips to Texas after the divorce and both were significantly longer

than the Newman's visit to Nevada. Third, the Orrs had significant ties to Texas since they lived there before and since members of their family continued to reside there, while the Newmans were merely tourists in Nevada. And lastly, in *Durr* the decedent had expressed his intent not to marry again, while the testimony in this case indicates that Mr. Orr intended to marry the appellant. Thus, it is clear that the facts in this case are at least as strong, and probably stronger, than those in *Durr.* Moreover, the appellee has not cited any Texas authority which is inconsistent with this conclusion or which indicates that a brief visit to Texas cannot provide the basis for the validation of a prior marriage under section 2.22.

For the reasons stated above, the Court holds that an invalid marriage was formed between the Orrs between 1961 and 1963 and that this marriage was later validated when the couple visited Texas after Mr. Orr's divorce. Therefore, the appellant is entitled to lump-sum survivor's benefits.

IT IS, THEREFORE, HEREBY ORDERED that the decision of the Appeals Council of the Department of Health and Human Services, Social Security Administration, is *REVERSED.*

---

\* Because of a procedural error, the court refused to take judicial notice of the fact that Nevada does not recognize common law marriages contracted within its borders.